UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PAUL DAVID URBANCZYK,

       Plaintiff,

            v.

NANCY A. BERRYHILL,
Acting Commissioner of
Social Security,

       Defendant.

_____/

Civil Action No. 16-12139
Honorable Marianne O. Battani
Magistrate Judge Elizabeth A. Stafford

**REPORT AND RECOMMENDATION ON CROSS-
MOTIONS FOR SUMMARY JUDGMENT [ECF. NO. 16, 19, 25]**

      Plaintiff Paul David Urbanczyk appeals a final decision of defendant

Commissioner of Social Security (Commissioner) denying his application

for disability insurance benefits (DIB) under the Social Security Act.

Urbanczyk filed a motion for summary judgment, while the Commissioner

moves to remand only to correct the record with respect to the period within

which Urbanczyk was deemed not disabled.  [ECF Nos. 16, 19, 25].  This

matter was referred to this Court for a report and recommendation pursuant

to 28 U.S.C. § 636(b)(1)(B).  After review of the record, the Court

**RECOMMENDS** that:

- Urbanczyk's motion [ECF No. 16] be **DENIED**;

- the Commissioner's motions [ECF No. 19, 25] be **GRANTED**; and

- this matter be **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) to correct the time period covered by the unfavorable decision below, and deem it to apply only from August 24, 2009, the day after a prior ALJ's decision.

## I. BACKGROUND

### A. Urbanczyk's Background and Claimed Disabilities

Born June 13, 1962, Urbanczyk was 50 years old on his amended onset date of June 13, 2012.  [ECF No. 11-5, Tr. 236].  He has a high school education, and past relevant work an auto glass installer.  [ECF No. 11-2, Tr. 36].  Urbanczyk alleged that he is disabled due to a back injury and subsequent failed surgery, diabetes, nerve damage, foot drop and depression. [ECF No. 11-6, Tr. 240].

After a hearing on July 30, 2014, during which Urbanczyk and a vocational expert (VE) testified, the ALJ found that Urbanczyk was not disabled.  [ECF No. 11-2, Tr. 12-24, 63-85].  The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. [*Id.*, Tr. 1-4].  Urbanczyk timely filed for judicial review.  [ECF No. 1].

**B.    The ALJ's Application of the Disability Framework Analysis**

DIB is available for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  A "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).

The Commissioner determines whether an applicant is disabled by analyzing five sequential steps.  First, if the applicant is "doing substantial gainful activity," he or she will be found not disabled.  20 C.F.R. § 404.1520(a)(4).  Second, if the claimant has not had a severe impairment or a combination of such impairments for a continuous period of at least 12 months, no disability will be found.  *Id.*  Third, if the claimant's severe impairments meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, the claimant will be found disabled.  *Id.*  If the fourth step is reached, the Commissioner considers its assessment of the claimant's residual functional capacity, and will find the claimant not disabled if he or she can still do past relevant work.  *Id.*  At the final step, the Commissioner reviews the claimant's RFC, age, education and work experiences, and determines whether the claimant could adjust to

3

other work.  *Id.*  The claimant bears the burden of proof throughout the first

four steps, but the burden shifts to the Commissioner if the fifth step is

reached.  *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110

(6th Cir. 1994).

Applying this framework, the ALJ concluded that Urbanczyk was not

disabled.  At step one, she found that Urbanczyk had not engaged in

substantial gainful activity from February 5, 2005, through his last insured

date of June 30, 2012.  [ECF No. 11-2, Tr. 15].  At step two, she found that

he had the severe impairments of "history of herniated lumbar disc status-

post surgical lumbar laminectomy and fusion and subsequent surgery to

remove right-sided instrumentation and obesity."  [*Id.*].  At step three, the

ALJ concluded that none of his impairments, either alone or in combination,

met or medically equaled the severity of a listed impairment.  [*Id.*, Tr. 18].

Between the third and fourth steps, the ALJ found that Urbanczyk had

the RFC to perform light work[1] "except that he is limited to occasionally

climbing stairs and ladders, crouching, crawling, kneeling, and

---

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."  20 C.F.R. § 404.1567(b).

stooping/bending and occasionally operating foot controls with the right lower extremity" and must "have the opportunity to alternate between sitting and standing while engaged in work activities and should avoid workplace hazards such as moving machinery, unprotected heights, and climbing stairs." [*Id.*, Tr. 18-19]. At step four, the ALJ found that Urbanczyk could not perform his past relevant work. [*Id.*, Tr. 21]. With the assistance of VE testimony, the ALJ determined at step five that based on Urbanczyk's age, education, work experience and RFC, he could perform work as an assembler, packager or inspector and that those jobs existed in significant numbers in the economy, rendering a finding that he was not disabled. [*Id.*, Tr. 22-23, 78-84].

## II.    STANDARD OF REVIEW

Pursuant to § 405(g), this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made in conformity with proper legal standards. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks and citation omitted). Only the

evidence in the record below may be considered when determining whether the ALJ's decision is supported by substantial evidence.  *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007).

Urbanczyk argues that the ALJ erred by finding his alleged mental impairment nonsevere, and that the ALJ's assessment of his physical RFC is not supported by substantial evidence.  The Court disagrees, but recommends remand so that the Commissioner can correct the date on which Urbanczyk was deemed no longer disabled.

## III.    ANALYSIS

### A.

Urbanczyk had a work related accident in February 2005, injuring his back.  [ECF No. 11-3, Tr. 94].  He applied for disability benefits, and in an August 24, 2009 decision, an earlier ALJ found that he was disabled for a closed period from February 2, 2005, until April 12, 2007.  [*Id.*, Tr. 95]. Inconsistently, the ALJ below found that Urbanczyk was not disabled "at any time from February 5, 2005, the alleged onset date, through June 30, 2012, the date last insured." [ECF No. 11-2, Tr. 23].  The Commissioner moved to remand in order to correct the error of the ALJ in rendering findings regarding Urbanczyk's disability status during a time period that was covered by the August 24, 2009, decision; the ALJ below effectively

and without authority reopened that prior opinion.  [ECF No. 19].  The

Commissioner urges that remand is warranted in order to prevent

Urbanczyk from being assessed for an overpayment of benefits due to the

error of the ALJ below.  [*Id.*, PageID 462].  Urbanczyk concurs.  [ECF No.

20, PageID 468].  Thus, this matter should be remanded in order to correct

the error of the ALJ below, and to deem the decision below as pertaining to

only the time period beginning August 25, 2009.

**B.**

A severe impairment is one that "significantly limits [the claimant's]

physical or mental ability to do basic work activities."  § 1520(c).  By "basic

work activities," the Commissioner means "the abilities and aptitudes

necessary to do most jobs," including:

> (1) Physical functions such as walking, standing, sitting, lifting,
> pushing, pulling, reaching, carrying, or handling;
> (2) Capacities for seeing, hearing, and speaking;
> (3) Understanding, carrying out, and remembering simple
> instructions;
> (4) Use of judgment;
> (5) Responding appropriately to supervision, co-workers and
> usual work situations; and
> (6) Dealing with changes in a routine work setting.

20 C.F.R. § 1522(b).

Here, the ALJ found that Urbanczyk's claimed mental impairment of

mood and pain disorder did not cause more than a minimal limitation in his

7

ability to perform basic mental health activities and was thus nonsevere. [ECF No. 11-2, Tr. 16]. Urbanczyk argues that this finding is not supported by substantial evidence.

In making this argument, Urbanczyk relies upon two consultative psychiatric examinations by M. Dibai, M.D., in February 2010 and October 2011. [ECF No. 11-7, Tr. 297-301, 313-16]. Urbanczyk notes that, in February 2010, Dr. Dibai assessed him as having a global assessment of functioning (GAF) score of 40.[2] [*Id.*, Tr. 300]. Dr. Dibai opined that he appeared to have impairments that manifested in "difficulty sustaining focus and concentration, particularly for extended periods of time," and that he "did not seem to be able to adapt to the changes of a work setting and assignments or cooperate with coworkers." [*Id.*, Tr. 300-01]. Urbanczyk further emphasizes that Dr. Dibai determined that he had a GAF of 45 in October 2011, and that he was "distractible" because of his preoccupation with low back pain. [*Id.*, Tr. 316]. Urbanczyk also points out that state agency psychologist Kathy A. Morrow Ph.D., who relied upon Dr. Dibai's

---

[2] "The GAF scale is a method of considering psychological, social, and occupational function on a hypothetical continuum of mental health. The GAF scale ranges from 0 to 100, with serious impairment in functioning at a score of 50 or below." *Norris v. Comm'r of Soc. Sec.*, No. 11–5424, 461 F.App'x 433, 436 n. 1 (6th Cir.2012) (citations omitted).

opinions, found his mental impairment to be severe.  [ECF No. 11-3, Tr. 104-05, 107].

The ALJ gave no weight to Dr. Dibai's opinions, and likewise gave no weight to Dr. Morrow's opinion because it relied upon the conclusions of Dr. Dibai.  [ECF No. 11-2, Tr. 16-17].  Since the ALJ rejected the only mental health opinions in the record, Urbanczyk argues that the ALJ played doctor in assessing his mental RFC.  The Court disagrees.

As an initial matter, it is Urbanczyk's burden to demonstrate that he suffers from severe mental health impairments.  *Preslar,* 14 F.3d at 1110. And while ALJ's have been cautioned to refrain from playing doctor and independently interpreting raw medical data, *Allen v. Comm'r of Soc. Sec.,* No. 12-15097, 2013 WL 5676254, at *15 (E.D. Mich. Sept. 13, 2013) adopted by 2013 WL 5676251 (E.D. Mich. Oct. 18, 2013) (collecting cases), the claimant must first sufficiently place his functional inability at issue.  *Deskin v. Comm'r of Soc. Sec.,* 605 F. Supp. 2d 908, 912 (N.D. Ohio 2008).  Here, Dr. Dibai's opinions are insufficient to place Urbanczyk's alleged mental impairments at issue.

The ALJ was not required to lend weight to Dr. Dibai's opinions pertaining to Urbanczyk's GAF.  The Sixth Circuit has emphasized that no "statutory, regulatory, or other authority require[s] the ALJ to put stock in a

9

GAF score in the first place." *Kornecky v. Comm'r of Soc. Sec.*, 167 F.

App'x 496, 511 (6th Cir.2006). Courts have recognized that "a GAF rating is

intended to demonstrate an individual's overall mental status at a specific

point in time, and is not to be construed as a longitudinal picture of an

individual's overall mental functioning."  *Stokes v. Comm'r of Soc. Sec.*, No.

1:13–CV–487, 2015 WL 803087, at *15 (W.D.Mich. Feb. 25, 2015).

And while Dr. Dibai called Urbanczyk distractible in October 2011, he

also opined, "From a psychiatric standpoint the patient did not seem to be

remarkable."  [ECF No. 11-7, Tr. 316].  The ALJ noted Urbanczyk

"displayed essentially the same presentation" at both his February 2010

and October 2011 examinations, and surmised that Dr. Dibai's more

significant 2010 findings were based on Urbanczyk's subjective reports.

[ECF No. 11-2, Tr. 17, *comparing* ECF No. 11-7, Tr. 297-301 *with id.*, Tr.

313-16].  Urbanczyk does not dispute that his presentation at the exams

was essentially the same, but argues that the ALJ should not discount

psychiatric evidence simply because it was based on subjective

complaints.  *Walker v. Sec'y of Health & Human Servs.*, 980 F.2d 1066,

1071 n. 3 (6th Cir. 1992) (recognizing the value of psychiatric reports,

which are not as easily substantiated as other medical impairments).

But in assessing Urbanczyk's ability to perform basic work activities, the ALJ properly relied upon the indication by Dr. Dibai that Urbanczyk reported his daily activities as taking care of his dog, cleaning up the house, preparing meals, doing laundry, playing video games, performing personal care without assistance, going grocery shopping and driving his own car.  [ECF No. 11-2, Tr. 16, citing ECF No. 11-6, Tr. 248-50; ECF No. 11-7, Tr. 298-99].  The ALJ correctly noted that, as it relates to Urbanczyk's social functioning, he reported living with his son, spending time with his son, grandchildren, girlfriend and a few friends from work, getting along well with everyone, and that Dr. Dubai observed him to be cooperative, expressive and respectful during his examination.  [ECF No. 11-2, Tr. 16, citing 11-6, Tr. 251, ECF No. 11-7, 298, 314].  As for Urbanczyk's concentration, persistence and pace, the ALJ noted that Urbanczyk reported that he was able to drive up to 30 miles per day, perform the daily activities previously mentioned, handle his money and had no problem following written and spoken instructions.  [ECF No. 11-2, Tr. 17, citing ECF No. 11-6, Tr. 250, ECF No. 11-7, Tr. 298-99, 314].  During both examinations by Dr. Dubai, Urbanczyk "displayed logical speech and relevant, organized, and goal-directed thought processes."  [ECF No. 11-2, citing ECF No. 11-7, Tr. 299, 314].  This evidence, as well as Dr. Dubai's

11

October 2011 finding that Urbanczyk was not remarkable from a psychiatric standpoint, constitutes substantial evidence in support of the ALJ's determination that Urbanczyk did not suffer from a mental impairment that precluded him from performing basic work activities.

The Court also rejects Urbanczyk's argument that the ALJ had a duty to further investigate the bases of Dr. Dubai's opinions.  Ordinarily, "[t]he burden of providing a complete record, defined as evidence complete and detailed enough to enable the Secretary to make a disability determination, rests with the claimant." *Landsaw v. Secretary of Health and Human Services*, 803 F.2d 211, 214 (6th Cir.1986).  An ALJ's duty investigate arises only when there are obvious gaps in the record.  *Kendall v. Astrue*, No. CIV.A. 2:10-263-DCR, 2011 WL 4388794, at *5 (E.D. Ky. Sept. 20, 2011).  "As long as there is sufficient evidence in the record for [her] to make a decision regarding the claimant's disability, it is within the discretion of an ALJ to close the record." *Penn v. Comm'r of Soc. Sec.,* No. 1:10CV1885, 2012 WL 646057, at *8 (N.D. Ohio Feb. 28, 2012).  Here, the ALJ evaluated the evidence and determined that it did not demonstrate a severe mental impairment.  There was no obvious gap in the record or reason for her to conclude that further investigation would alter her decision on this issue.

Finally, Urbanczyk argues that the ALJ erred by not considering his mental impairments in the remainder of her analysis.  In her decision, the ALJ stated that her assessment of Urbanczyk's RFC reflected the degree of limitation of mental functioning that she found.  [ECF No. 11-2, Tr. 18]. Even if the ALJ did not consider Urbanczyk's alleged mental impairment, as the claimant, Urbanczyk has the burden of demonstrating that he requires a more restrictive RFC.  *Preslar,* 14 F.3d at 1110 (claimant bears burden during first four steps); *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008) (claimant bears burden of demonstrating need for more restrictive RFC). He has not demonstrated that his mental impairments require a more restrictive RFC.

## C.

Urbanczyk next argues that the ALJ's assessment of his RFC is not supported by substantial evidence.  In support of this argument, Urbanczyk takes issue with the weight the ALJ gave to medical opinions in the record. The Court finds no error.

Urbanczyk asserts that the ALJ erred by not giving controlling weight to the opinions of treating physician R. Harris, D.O., after his last insured date of June 30, 2012.  In a November 30, 2012, medical source statement, Dr. Harris opined that Urbanczyk could not work because of the

13

side effects of medication; could walk no city blocks; could sit for no more than 45 minutes at a time and stand for no more than 20 minutes at a time; could sit and stand/walk for less than two hours in a day; must have periods of walking and periods of breaks in a work day; required a cane; could occasionally lift 10 pounds or less but never more; could rarely twist, occasionally climb stairs, and never crouch, squat or climb ladders; would be off task 25% or more of the typical workday, and absent from work more than four days a month; and was incapable of low stress work.  [ECF No. 11-7, Tr. 332-35].  In July 2014, Dr. Harris wrote on a prescription pad that Urbanczyk was limited to sedentary work.  [*Id.*, Tr. 365].

The "treating physician rule" requires an ALJ to give controlling weight to a treating physician's opinions regarding the nature and severity of a claimant's condition when those opinions are well-supported by medically acceptable clinical and diagnostic evidence, and not inconsistent with other substantial evidence.  *Gentry*, 741 F.3d at 723, 727-29; *Rogers*, 486 F.3d at 242-43.  An ALJ who decides to give less than controlling weight to a treating physician's opinion must give "good reasons" for doing so, in order to "make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons

14

for that weight." *Rogers*, 486 F.3d at 242 (quoting SSR 96-2p, 1996 WL 374188, at *5 (1996)).

Here, the ALJ gave little weight to both of Dr. Harris's opinions, first noting that they were rendered after Urbanczyk's last insured date. Ordinarily, the ALJ "only considers evidence from the alleged disability onset date through the date last insured." *Anderson v. Astrue*, No. 11–15636, 2012 WL 4867703, at *3 n. 1 (E.D.Mich. Sept.18, 2012), *adopted by* 2012 WL 4868391 (E.D.Mich. Oct.15, 2012).  But evidence of a medical condition that post-dates a claimant's date last insured may still be considered "to the extent it illuminates claimant's health before that date." *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988).  Here, the Court considers Dr. Harris's July 2014 "opinion" that Urbanczyk could perform no more than sedentary work to be rendered too far after the date of last insured to illuminate Urbanczyk's functionality during the relevant period. And even if it were not too far removed, Dr. Harris did not support this opinion with medical evidence, and as the ALJ aptly noted, "[i]t is not clear that Dr. Harris was using the term 'sedentary' as defined by the Social Security rules and regulations."  [ECF No. 11-2, Tr. 20].

Dr. Harris's November 2012 opinion was offered within months of Urbanczyk's date of last insured, and may have been relevant.  But the ALJ

found that Dr. Harris's conclusions in that opinion "were based primarily on the claimant's subjective complaints, as both his treatment notes and his treatment of the claimant are not consistent with what one would expect if the claimant were truly as limited as he has reported." [*Id.*]. Urbanczyk argues that while it is true that Dr. Harris "did not often see plaintiff, and his treatment notes are not particularly illuminating," that was because Dr. Harris was seeing Urbanczyk basically for free due to lack of insurance, and that Dr. Harris did recount positive objective findings to support his opinion. [ECF No. 16, PageID 445]. These arguments are without merit.

The ability to afford treatment is a factor used to assess a claimant's credibility, *see Lee v. Comm'r of the Soc. Sec. Admin.*, No. 14-CV-11292, 2015 WL 4394275, at *13 (E.D. Mich. July 16, 2015), but Urbanczyk cites no authority rendering a claimant's lack of insurance as a factor in assessing the supportability of a treating physician's opinion. And while it is true that Dr. Harris checked boxes indicating that the objective signs of Urbanczyk's physical limitations were a reduced range of motion of the right foot, positive straight leg raising test, abnormal gait, sensory loss, muscle spasm, motor loss and impaired sleep, [ECF No. 11-2, Tr. 333], the records that Urbanczyk cited do not show that Dr. Harris found those objective signs from his examinations. [ECF No. 16, PageID 430-31].

16

Urbanczyk cited a November 2009 appointment in which Dr. Harris examined his foot rash, [ECF No. 11-7, Tr. 310]; an October 2010 record that did not evidence a musculoskeletal examination but nonetheless showed a diagnosis of back pain/lumbago, [*id.*, Tr. 307-08]; an August 2011 record in which the only relevant note was that Urbanczyk was "[a]ble to raise legs while sitting," [*id.*, Tr. 304]; two notes from November 2012 stating that Urbanczyk had back pain, but one of which indicated that he was "[f]eeling fairly well," [*id.*, Tr. 337, 339]; and a September 2013 record showing that Urbanczyk was "[p]ostive for back pain." The ALJ's finding that Dr. Harris's November 2012 opinion was not consistent with his records is supported by substantial evidence.

It is true, as Urbanczyk notes, that Stephan Glowacki, M.D., reported objective findings that were consistent with those cited by Dr. Harris after a November 14, 2012, examination that was conducted at the request of Urbanczyk's attorney. Dr. Glowacki wrote:

> [H]e has difficulty to [sic] sit down and to get up from sitting position. He is not able to stand up independently. He is not able to stand up on the right and left leg. He is not able to walk on his toes and on his heels. He is not able to squat or to hop on the right or left leg. He walks on and off with the cane. He has difficulty to [sic] look up to the ceiling, down to the floor. He is not able to bend; he is not able to touch even his knees.

[ECF No. 11-7, Tr. 330].  According to Dr. Glowacki, Urbanczyk experienced muscle spasms; had "[n]o range of motion because of the pain"; had a positive straight leg raising test; had an absent left knee reflex, diminished right knee reflex, and absent ankle reflex bilaterally; had dropped foot on the right side and weakness on the left; had diminished sensation, almost absent, in his lumbar spine; and had atrophy of musculature in both lower extremities.  [*Id.,* Tr. 331].  Dr. Glowacki concluded that Urbanczyk "will never be able to work," that his condition would get progressively worse, and that "[h]e is lucky if he is going to be with us for some time."  [*Id.*].

The ALJ gave Dr. Glowacki's opinion little weight because it was inconsistent with other objective evidence in the record, and there was a "significant difference in his presentation at this exam compared to his presentation with Dr. Harris."  [ECF No. 11-2, Tr. 20].  The ALJ opined that Urbanczyk may have been exaggerating his limitations at his examination with Dr. Glowacki, and noted that the opinion was solicited by Urbanczyk's attorney in order to provide evidence for his disability application.  [*Id.*, Tr. 20].

Urbanczyk argues that the ALJ failed to acknowledge the considerable consistency between the findings of Dr. Glowacki and Dr.

18

Harris.  [ECF No. 16, Tr. 447].  But the *only* record in which Dr. Harris cited objective findings that are consistent with Dr. Glowacki's was in Dr. Harris's November 2012 medical source statement. [ECF No. 11-7, Tr. 332-35].  In fact, on the same day that Dr. Glowacki examined Urbanczyk, November 14, 2012, Dr. Harris examined Urbanczyk and described him as "[f]eeling fairly well."  [*Id.*, Tr. 360].  And in December 2011, during the one occasion in which it appears that Dr. Harris conducted a thorough musculoskeletal examination, the results were entirely "normal" and "benign" except for a positive straight leg raising test on the right.  [*Id.*, Tr. 320].  Nothing in Dr. Harris's records is consistent with Dr. Glowacki's findings that Urbanczyk could not independently stand up, that he had no range of motion and absent reflexes, that he had almost absent sensation in his lumbar spine, that his condition was getting progressively worse, or that he will be lucky to be with us soon.  This suggests that Dr. Harris simply used Dr. Glowacki's extreme findings to support the November 30, 2012, medical source statement, and that Dr. Harris did not actually observe those findings himself.

Dr. Glowacki's extreme findings are also inconsistent with those of independent medical examiner E. Monstasir, M.D., who examined Urbanczyk in February 2010.  Dr. Monstasir found that Urbanczyk had an

antalgic gait, could not walk on heels and toes, was limited for squatting, and had a positive straight leg raising test, but that he could tandem walk, did not need a walking aid, could get on and off the examination table, had satisfactory grip strength, had no joint deformity or enlargement, had a normal neurologic examination, and that his foot drop seemed to have recovered.  [ECF No. 11-7, Tr. 290-95].  Urbanczyk had normal ranges of motion except some limitation in his lumbar spine, and right ankle; and his reflexes were normal except for reduced reflexes in his right achilles.  [*Id.*]. Dr. Monstasir concluded that Urbanczyk "should be able to work as far as his physical condition is concerned," except that he was limited to walking a quarter of a block; standing a half-hour at a time; pushing, pulling and lifting 25 to 30 pounds; no bending or tying shoes; reduced squatting; and climbing only a flight of stairs. [*Id.*, Tr. 290, 294].

The ALJ gave most of Dr. Montasir's opinion significant weight, but gave little weight to the findings that Urbanczyk was limited to walking a quarter mile, standing for a half-hour, and could not bend.  [ECF No. 11-2, Tr. 21].  The ALJ reasoned that those limitations appeared to be based upon Urbanczyk's subjective complaints.  [*Id.*].  Urbanczyk argues that Dr. Montasir relied upon objective findings—his antalgic gait, limited ability to squat and positive straight leg raising test—and that the ALJ was playing

doctor by rejecting those lower-extremity limitations.  [ECF No. 16, PageID 447].  But the ALJ was ultimately charged with determining Urbanczyk's RFC, not Dr. Montasir.  *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010) ("The Social Security Act instructs that the ALJ—not a physician—ultimately determines a claimant's RFC."); *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 727 (6th Cir. 2013) ("[T]he regulations require the ALJ to evaluate the medical evidence to determine whether a claimant is disabled.").

It is true that an ALJ is cautioned against interpreting raw medical data beyond her expertise.  *See Rudd,* 531 F. App'x 727.  Yet even if the ALJ erred by finding that Dr. Montasir's limitations went too far, that error would be harmless because the VE testified that jobs would exist in the national economy even with the additional limitations of standing for only a half-hour at a time, walking a quarter block, and even if the work was primarily sedentary.  [ECF No. 11-2, Tr. 81-82].

For these reasons, remand for reconsideration of Urbanczyk's RFC is not warranted.

## III.   CONCLUSION

For the reasons stated above, the Court **RECOMMENDS** that the Commissioner's motions to remand [ECF Nos. 19, 25] be **GRANTED**; that

21

Urbanczyk's motion [ECF No. 16] be **DENIED**; and this matter be

**REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) to correct the

time period covered by the unfavorable decision below, and deem it to

apply only from August 24, 2009.

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
United States Magistrate Judge

Dated: July 21, 2017

## NOTICE TO THE PARTIES REGARDING OBJECTIONS

Either party to this action may object to and seek review of this

Report and Recommendation, but must act within fourteen days of service

of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ.

P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any

further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v.*

*Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*,

638 F.2d 947 (6th Cir. 1981).  Filing objections which raise some issues but

fail to raise others with specificity will not preserve all objections that party

might have to this Report and Recommendation.  *Willis v. Secretary of*

*HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers*

*Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  A copy of any objection

must be served upon this Magistrate Judge.  E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and Recommendation to which it pertains.  Not later than fourteen days after service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.  The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 21, 2017.

s/Marlena Williams
MARLENA WILLIAMS
Case Manager
